**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JOSE LUIS LOPEZ CRUZ,** | **CIVIL ACTION** |
| Petitioner, | |
| *v.* | **NO. 26-2278-KSM** |
| **J.L. JAMISON**, *Warden, Federal Detention Center, Philadelphia*, et al., | |
| Respondents. | |

<u>**MEMORANDUM**</u>

**MARSTON, J.**                                                    **May 7, 2026**

Over the last seven months, this Court and hundreds of others across the country have granted numerous habeas petitions filed by noncitizens because their detention without a bond hearing was unlawful and unconstitutional; this is not one of those occasions.

On April 2, 2026, Petitioner Jose Luis Lopez Cruz was arrested and detained by agents of the U.S. Department of Homeland Security ("DHS"); to date, he has not been given a bond hearing.  (*See* Doc. Nos. 1, 8.)  He challenges his detention on three grounds:  (1) his detention is based upon an improper reading of 8 U.S.C. § 1225(b)(2), a provision of the Immigration and Nationality Act (the "INA"); (2) the decision by DHS and U.S. Immigration and Customs Enforcement ("ICE") to expand mandatory detention to noncitizens like Lopez Cruz is arbitrary and capricious under the Administrative Procedure Act; and (3) his detention violates both substantive and procedural due process, as required by the Fifth Amendment to the U.S. Constitution.  (*See* Doc. No. 1 at 12–16).  The Government[1] retorts that Lopez Cruz is *not*

---

[1] Lopez Cruz names four government officials, in their official capacities, and two government agencies as Respondents:  (1) J.L. Jamison, Warden of the Federal Detention Center ("FDC"); (2) John E. Rife, Acting Field Office Director ICE's Philadelphia Field Office; (3) Markwayne Mullin, Secretary of

detained pursuant to 8 U.S.C. § 1225(b)(2) but is instead properly detained pursuant to 8 U.S.C. § 1226(c)(1)(E), due to charges brought against him in the Philadelphia Court of Common Pleas for aggravated assault, strangulation, simple assault, and recklessly endangering another person. (Doc. No. 8 at 2; Doc. Nos. 8-1, 8-3.)  As such, the Government argues Lopez Cruz's first two arguments for release do not apply and that his continued detention under Section 1226(c) does not violate the Constitution.  (Doc. No. 8 at 6–10.)  Lopez Cruz replies that Section 1226(c) does not apply to him because the charges against him were withdrawn almost two weeks after he was taken into ICE custody.  (Doc. No. 10.)

For the reasons discussed below, this Court agrees with the Government.  Lopez Cruz was and is properly detained pursuant to Section 1226(c)(1)(E) due to his January 2026 charges and arrest.  The fact that his charges have now been withdrawn by the Commonwealth does not unwind his detention's legality.  And, as of the date of this Memorandum, his continued detention does not yet violate either his substantive or procedural due process rights.

## I.    FACTUAL BACKGROUND & PROCEDURAL HISTORY

On March 3, 2005, Lopez Cruz, a citizen of Mexico, was encountered and arrested by agents of U.S. Customs and Border Patrol ("CBP") near the U.S./Mexico border in California. (Doc. No. 8-5 at 2.)  Lopez Cruz then voluntarily returned to Mexico.  (*Id.*)  On August 23, 2009, Lopez Cruz was again encountered and arrested by CBP near the U.S./Mexico border, this time in Arizona, and again chose to voluntarily return to Mexico.  (*Id.*)  At some later date, Lopez Cruz entered the U.S. for a third time; but this time was not encountered by CBP.[2]  (*See*

---

DHS; (4) Todd Blanche, Acting U.S. Attorney General, automatically substituted under Federal Rule of Civil Procedure 25(d) for Pamela Bondi, the named party; (5) DHS; and (6) the Executive Office of Immigration Review (collectively, the "Government").  (Doc. No. 1 at 1.)

[2] The Petition appears to conflict with this timeline as it states that Lopez Cruz "entered the United States at [sic] on or about 2007."  (Doc. No. 1 at 5.)  But the exact year that Lopez Cruz entered the U.S. is immaterial to the Court's analysis here as the parties do not dispute that Lopez Cruz was

*generally* Doc. No. 1.)  Since that time, he has purportedly lived in Philadelphia, Pennsylvania, married a U.S. citizen, and fathered "an eight-year-old daughter who has epilepsy."  (*Id.* at 5.)  But, at some point prior to the events underlying the instant action, "he got divorced . . . and is now in a relationship with another U.S. citizen."  (*Id.*)

On January 11, 2026, at 5:03 a.m., officers of the Philadelphia Police Department ("PPD") responded to a report of a domestic dispute on the 900 block of E Sanger Street, Philadelphia, Pennsylvania.  (Doc. No. 8-3 at 1.)  Upon arrival, PPD observed Lopez Cruz walk down the front steps of the residence and he stated, "everything is ok."  (*Id.*)  Then, Lopez Cruz's girlfriend "came running down the steps" and stated, "she had been struck by [Lopez Cruz]" and he was "trying to kill her."  (*Id.*)  Later that morning she also stated that Lopez Cruz "punch[ed] and hit[]" her in the face "and then strangled her" to the point "she found it difficult to breathe."  (*Id.*)  At the scene, and later that morning, PPD observed facial injuries, including a black eye, and "scratches around [Lopez Cruz's girlfriend's] neck."  (*Id.*)  Lopez Cruz was then arrested and charged with aggravated assault, strangulation, simple assault and reckless endangerment.  (*Id.*)  Bail was set at 10 percent of $75,000.  (Doc. No. 8-1 at 2.)  On January 16, 2026, Lopez Cruz's bail was decreased to 10 percent of $20,000, and he posted $2,000 bail in cash on January 20, 2026, and was released from Commonwealth custody.  (*Id.*)

On January 12, 2026, Lopez Cruz "was encountered by ICE[,]" but was not taken into federal custody as he was still in the custody of the Commonwealth.  (*See* Doc. No. 8-5 at 2.)  That same day, ICE obtained an immigration detainer, pursuant to 8 U.S.C. § 1226(c)(3), for Lopez Cruz.  (Doc. No. 11-1.)  ICE lodged the immigration detainer, but the Commonwealth

---

arrested in Philadelphia, Pennsylvania and, as of the date of this Memorandum, appears to be removable from the United States under the INA.

subsequently refused to honor the detainer, and ICE was not alerted when Lopez Cruz was released from custody on January 20, 2026.  (Doc. No. 11 at 4.)  Then, as discussed above, on April 2, 2026, Lopez Cruz was encountered and detained by ICE agents at the same E Sanger Street address where the January 11, 2026 incident occurred.  (Doc. No. 8-5.)  At that time, he was served with a Notice to Appear in Immigration Court in Elizabeth, New Jersey, which charged him with having entered the United States without admission or inspection, in violation of 8 U.S.C. § 1182(a)(6)(A)(i), and not being in possession of a valid entry document, in violation of 8 U.S.C. § 1182(a)(7)(A)(i)(I).  (*Id.*)  His hearing was set for April 13, 2026.  (*Id.*)

Lopez Cruz filed the instant Petition on April 8, 2026 (Doc. No. 1), and the same day this Court issued an order enjoining the Government from moving Lopez Cruz out of this District "pending further Order of this Court" (Doc. No. 2).  The parties then informed the Court that, prior to its Order, Lopez Cruz had been moved to the Moshannon Valley Processing Center ("MVPC") in Philipsburg, Pennsylvania.  On April 9, 2026, the Court held a status conference to discuss whether we have jurisdiction to hear the instant action, considering Lopez Cruz's location.  (Doc. No. 5.)  The Court ordered the parties to provide a joint letter brief on jurisdiction by April 15, 2026 (Doc. No. 6.), in which "the parties submit[ed] that habeas jurisdiction [for this action] is proper within the EDPA" (Doc. No. 7 at 4).[3]  Separately, but that same day, the Philadelphia County District Attorney's Office withdrew the aggravated assault and other charges against Lopez Cruz due to "[p]rosecutorial discretion."  (Doc. No. 8-2 at 2.)

---

[3] While the MVPC is not located in the Eastern District of Pennsylvania, Lopez Cruz was detained at the FDC, in this District, on April 8, 2026, when the instant Petition was filed.  (*See* Doc. No. 1-4.)  As such, this Court has jurisdiction over the Petition even though Lopez Cruz has been moved and is currently outside the Eastern District of Pennsylvania. *See Khalil v. President, United States*, 164 F.4th 259, 270–71 (3d Cir. 2026); (*see also* Doc. No. 7 (discussing how Respondents stipulate to this District having jurisdiction and arguing it is proper under the unknown custodian exception)).

4

The Government responded opposing the Petition on April 21, 2026.  (Doc. No. 8.) Lopez Cruz replied on April 28, 2026.  (Doc. No. 10.)  The Government sur-replied on May 1, 2026.  (Doc. No. 11.)  And the Court held oral argument on the Petition on May 5, 2026.  (Doc. No. 14.)  The Petition is thus ripe for resolution.

## II.    LEGAL STANDARDS

Lopez Cruz seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  Under that provision, a federal district court is authorized to grant a writ of habeas corpus to a petitioner who is "in custody under or by color of the authority of the United States . . . in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(1), (3).  The petitioner carries the burden of showing his detention violates the Constitution or federal law. *Id.* § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

Under the Due Process Clause of the Fifth Amendment to the U.S. Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]"  U.S. Const. amend. V.  "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation proceedings but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

## III.    DISCUSSION

Lopez Cruz was originally and remains properly detained pursuant to Section 1226(c)(1)(E) of the INA, and his continued detention does not yet violate due process of law. Lopez Cruz brought the instant Petition arguing primarily that his detention is due to the Government's new and broad interpretation of 8 U.S.C. § 1225(b)(2), which allows for

mandatory detention of noncitizens "seeking admission" to this country.[4]  (*See* Doc. No. 1 at 6–10.)  The Government's response in opposition to the Petition asserts a wholly separate ground for detention: 8 U.S.C. § 1226(c)(1)(E), as amended by the Laken Riley Act, demands mandatory detention for noncitizens—like Lopez Cruz—charged with or arrested for enumerated crimes.  (Doc. No. 8 at 2–8.)[5]  Lopez Cruz replies that almost two weeks after he was detained by the Government, the charges against him were withdrawn, so he no longer can be detained pursuant to Section 1226(c)(1)(E), and even if he could, such detention would violate his rights to due process.  (*See* Doc. No. 10.)  The Court explains why Section 1226(c)(1)(E) applies to Lopez Cruz, before discussing why his due process rights to date have not been violated to date.

A.    **Section 1226(c)(1)(E) Applies to Lopez Cruz's Detention**

"In 2025, Congress passed the Laken Riley Act which amended [8 U.S.C.] § 1226(c) to add new categories of noncitizens subject to mandatory detention." *Ndiaye v. Jamison*, No. 25cv6007, 2025 WL 3229307, at *6 (E.D. Pa. Nov. 19, 2025) (citing Pub. L. No. 119-1 § 2, 139 Stat. 3 (2025)).  Following its passage, Section 1226(c)(1) now reads, in relevant part:

> The Attorney General shall take into custody any alien who . . .

---

[4] Lopez Cruz's Petition also makes arguments that the Government's recent re-interpretation of Section 1225(b)(2) is arbitrary and capricious and violates the Administrative Procedure Act.  (*See* Doc. No. 1 at 13.)  Because we find Lopez Cruz is not detained pursuant to Section 1225(b)(2), we do not reach that argument.

[5] The Government also argues in the alternative that if the Court finds Lopez Cruz is detained pursuant to Section 1225(b)(2), not Section 1226(c), he should remain detained because mandatory detention under Section 1225(b)(2) is lawful. (Doc. No. 8 at 10–14.)  As mentioned above, this Court and hundreds of federal courts around the country—including recently the U.S. Courts of Appeals for the Second and Eleventh Circuits—disagree with that interpretation of Section 1225(b)(2). *See e.g.*, *Hussain v. O'Neill*, No. 26cv35, 2026 WL 66891, at *5–6 (E.D. Pa. Jan. 8, 2026); *Menendez Ordonez v. Jamison*, No. 26cv1683, 2026 WL 782165, at *1 & n.1 (E.D. Pa. Mar. 19, 2026) (collecting cases); *see also Cunha v. Freden*, No. 25cv3141, __ F.4th __, 2026 WL 1146044 (2d Cir. Apr. 28, 2026); *Hernandez Alvarez v. Warden, Federal Detention Center Miami*, No. 25cv14065, __ F.4th __, 2026 WL 1243395 (11th Cir. May 6, 2026).  But because the Court finds Lopez Cruz is not detained pursuant to Section 1225(b)(2), the Court will not again address the interpretation of Section 1225(b)(2) here.

>(E)(i) is inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) of this title; and
>(ii) is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person,
>
>when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(c)(1)(E)(i)–(ii) (emphasis added).  Lopez Cruz concedes that (1) he is inadmissible under paragraphs (6)(A) and (7) of 8 U.S.C. § 1182(a), (2) one of the crimes he was arrested for and charged with, aggravated assault, contains as an element "serious bodily injury to another person" 18 Pa. Cons. Stat. § 2702(a)(1), and (3) he was properly detained pursuant to Section 1226(c)(1)(E) from April 2, 2026 to April 14, 2026.  (*See* Doc. No. 1; Doc. No. 10; Doc. No. 14.)

The primary statutory issue in dispute is whether Section 1226(c) can still apply to Lopez Cruz *today*, now that the state charges against him have been withdrawn.  (*See* Doc. No. 8 at 2–8; Doc. No. 10 at 2–8; Doc. No. 11 at 1–8.)  Lopez Cruz argues that "[t]his is a case of simple statutory interpretation" regarding what the phrases "is charged with, is arrested for, or is convicted of" means in the context of Section 1226(c)(1)(E).  (Doc. No. 10 at 2.)  Lopez Cruz believes Congress's use of the word "is" imposes a continuing present-in-time requirement that a noncitizen detained under Section 1226(c)(1)(E) also be, in parallel, arrested, charged, or convicted of one of the enumerated crimes.  (*Id.* at 3–8.)  He argues this is supported by both the plain text and structure of Section 1226(c)(1)(E).  To be sure, the argument has some intuitive appeal, but fails upon close inspection.

*First*, the text of Section 1226(c)(1)(E) does not impose a continuing obligation on the Government's detentions.  When interpretating federal statutes, we must "start with the statutory text."  *Garland v. Cargill*, 602 U.S. 406, 415 (2024).  And, as Lopez Cruz acknowledges, "when the express terms of a statute give us one answer and extratextual considerations suggest another, it's no contest."  (Doc. No. 10 at 3) (quoting *Bostock v. Clayton Cnty.*, 590 U.S. 644, 654 (2020)).  But "the fundamental canon of statutory construction [is] that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."  *Mejia-Castanon v. Att'y Gen. of the U.S.*, 931 F.3d 224, 234 (3d Cir. 2019) (quoting *King v. Burwell*, 576 U.S. 473, 492 (2015)).

Here, the phrases "is charged, is arrested for, is convicted of" do impose a present-sense obligation upon the Government, but Lopez Cruz's interpretation takes that obligation one step too far.  Read in its full context, Section 1226(c)(1)(E) provides a list of factual predicates for— not imposing a continuing obligation upon—noncitizen detention.  Section 1226(c)(1) demands that DHS and ICE "*shall take* [a noncitizen] into custody" if he or she, "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense. . . ."  8 U.S.C. § 1226(c)(1)(E)(ii).  The above phrases constitute separate triggering events that allow for mandatory detention under Section 1226(c), the "taking" required by Section 1226(c)(1).  So long as that event is presently occurring at the time the Government detains an otherwise qualifying noncitizen, he or she is properly detained under Section 1226(c)(1).  *See Carlos E. V. v. Bondi*, No. 26cv1618, 2026 WL 765357, at *3 (D. Minn. Mar. 18, 2026) ("[T]o determine whether 8 U.S.C. § 1226(c)(1)(E)(ii) applies . . ., the Court looks to [the noncitizen's] present status at the moment when he is 'take[n] into [ICE] custody.'"

8

(quoting 8 U.S.C. § 1226(c)(1))); *Calderon v. Noem*, No. 25cv2136, 2025 WL 3754042, at *4

(W.D. Wash. Dec. 29, 2025) ("The applicability of [Section 1226(c)(1)(E)] is not an exercise in

fortune-telling; the relevant facts are those that existed at the time of detention"); *see also*

*Ndiaye*, 2025 WL 3229307, at *6 ("The amended subsection explicitly requires mandatory

detention of all noncitizens who (1) are 'inadmissible' . . . and (2) **have been charged** with or

convicted of certain crimes such as burglary.  8 U.S.C. § 1226(c)(1)(E).  Simply, if a noncitizen

entered the country illegally and was subsequently convicted or charged with certain crimes, the

noncitizen must be detained without a bond hearing while their removal proceedings are

pending.") (emphasis added).[6]

A couple of examples make this clear.  The text states that a noncitizen shall be detained

if he or she "is arrested for . . . any crime that results in death or serious bodily injury to another

person," such as aggravated assault or murder.  8 U.S.C. § 1226(c)(1)(E)(ii).  Under Lopez

Cruz's reading, if an individual was arrested by the Commonwealth for aggravated assault, then

---

[6] Contrary to his argument (Doc. No. 10 at 5), Lopez Cruz's citation to this Court's holding in *Vimos v. Federal Detention Center Philadelphia*, No. 26cv780, 2026 WL 381173, at *5 n.12 (E.D. Pa. Feb. 11, 2026) supports this interpretation.  There, the Court was reemphasizing its prior holdings that the phrase "seeking admission" imposes an active condition "***at the time of [a noncitizen's] arrest***." *Vimos*, 2026 WL 381173, at *5 (emphasis added).  Nowhere in this Court's prior holdings in Section 1225(b)(2) cases, including *Vimos*, have we found that the phrase "seeking admission" requires an active condition both at the time of arrest and later during the detention.  *See id.*

Many of the cases Lopez Cruz cites where courts have found there is a present-sense obligation are factually distinguishable from the instant action because in those actions, the triggering event was no longer present at the moment the petitioner was arrested.  *See Barnett Maisch v. Jamison*, No. 26cv2498, Doc. No. 5 at 4; Doc. No. 11 at 2 n.3 (E.D. Pa.) (granting habeas petition and after noting charges were withdrawn nine days prior to arrest); *Santos-Barahona v. Jamison*, No. 26cv1776, 2026 WL 1047056, at *1 (E.D. Pa. Apr. 17, 2026) (charges withdrawn and non-qualifying conviction occurred four days prior to detention); *Rueda Torres v. Francis*, No. 25cv8408, 2025 WL 3168759, *1–2 (S.D.N.Y. Nov. 13, 2025) (noting the charges were withdrawn approximately ten months prior to petitioner's initial detention).  And to the extent that other courts have found such a continuing obligation, this Court disagrees with their interpretation of the plain text of Section 1226(c), as amended by the Laken Riley Act, because the subsequent withdrawal of charges, for example, cannot retroactively make the initial detention unlawful and the plain text of the statute does not support a *continuing* present sense requirement.  *See, e.g.*, *Carlos E. V.*, 2026 WL 765357, at *3; *Calderon*, 2025 WL 3754042, at *4 n.3.

subsequently detained by the Government under Section 1226(c), the Government would actually be forced to immediately release Lopez Cruz because at that moment, he would no longer *presently* be arrested for the underlying crime of aggravated assault.  Or, as the Government discusses in its sur-reply, Lopez Cruz's reading would render DHS at the whim of whether a state or Commonwealth jail could or would honor its immigration detainer.  (*See, e.g.*, Doc. No. 11 at 4.)  These outcomes cannot flow from a plain reading of Section 1226(c)(1)(E).

*Second*, the structure of Section 1226(c)(1), as amended by the Laken Riley Act, confirms our interpretation.  As a preliminary matter, the other phrases in the relevant paragraph besides those beginning with "is" provide no support for any continuing obligation.  *See* 8 U.S.C. § 1226(c)(1)(E)(ii) (stating other acts that qualify are when a noncitizen "admits having committed, or admits committing" certain theft-related or violent acts).  These are, by their plain meaning, not continuing acts, but *triggering events*.  Lopez Cruz's reading would have the Court exhume the first three phrases in this list and impose a non-textual meaning it does not—and cannot—impose on the latter two.

Further, Lopez Cruz asks the Court to ignore additional portions of Section 1226(c).  This Court may not read the statute in a way that would render certain words or sections superfluous.  *See U.S. ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) ("[E]very clause and word of a statute should have meaning."); *Corley v. United States*, 556 U.S. 303, 314 (2009) ("[A] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." (quotation marks omitted)).  The last clause of Section 1226(c)(1)(E)(ii) states that DHS must still detain qualifying noncitizens "without regard to whether the [noncitizen] is released on parole, supervised release, or probation, and without regard to whether the [noncitizen] may be arrested or imprisoned again for the same

10

offense." Under Lopez Cruz's reading, this portion of the statute, which was also added at the same time as the phrases in question, becomes wholly unnecessary if to qualify a noncitizen must *presently* be charged or convicted of a crime. Similarly, Section 1226(c)(4) contains express language that delineates the only specific times where noncitizens detained pursuant to Section 1226(c) may be released. *See* 8 U.S.C. § 1226(c)(4) (stating DHS "may release an alien described in [Section 1226(c)(1)] ***only*** if the Attorney General decides . . . that release of the alien from custody is necessary" for witness protection, and that they are not a danger to the community or a flight risk) (emphasis added). "By expressly stating that the covered aliens may be released 'only if' certain conditions are met, [Section 1226(c)(4)] unequivocally imposes an affirmative *prohibition* on releasing them under any other conditions." *Jennings v. Rodriguez*, 583 U.S. 281, 304 (2018) (emphasis in original). The natural effect of Lopez Cruz's argument is that any time charges are dropped or withdrawn against a noncitizen in ICE custody pursuant to Section 1226(c), ICE must immediately release that individual, notwithstanding Section 1226(c)(4).

*     *     *

Thus, upon a holistic review of the statutory text, the Court finds that Section 1226(c)(1)(E) does not impose a continuing obligation on the Government. Section 1226(c)(1)(E) only requires that noncitizens qualify, at some point after the Laken Riley Act's passage[7], under one of the categories enumerated at the time they are originally detained by the Government.[8]

---

[7] "[T]he plain language, statutory context, and attachment of disabilities to past conduct" make clear the Laken Riley Act "is not a retroactive statute," i.e., it cannot be used to detain noncitizens for conduct that occurred prior to its passage on January 29, 2025. *Matute v. Jamison*, No. 25cv7093, 2026 WL 461557, at *5–6 (E.D. Pa. Feb. 18, 2026).

[8] While the Court finds the statutory text sufficiently clear, our finding is further bolstered through a cursory review of the legislative history of the Laken Riley Act. The Act clearly states that its

11

And, when the Court applies the foregoing to Lopez Cruz's instant Petition, we must find he is validly detained under Section 1226(c)(1)(E), as amended by the Laken Riley Act. The parties do not dispute, and Lopez Cruz concedes, that on April 2, 2026, the day Lopez Cruz was detained, and even on the day he filed the instant Petition, he was still charged with aggravated assault. (*See* Doc. No. 14.) So, he had the status of a noncitizen who "is charged with . . . [a] crime that results in . . . serious bodily injury to another person," and thus was and still is properly detained. 8 U.S.C. § 1226(c)(1)(E)(ii).

But this does not end the Court's inquiry.

### B.   Lopez Cruz's Detention Does Not Yet Violate Due Process

The Court next addresses Lopez Cruz's constitutional argument. Lopez Cruz argues that if the Court finds he is properly detained under Section 1226(c)(1)(E), his continued detention violates his rights to due process under the Fifth Amendment. Specifically, he argues that as-

---

purpose is "[t]o require the Secretary of Homeland Security to take into custody aliens who have been charged in the United States with theft, and for other purposes." Preamble to the Laken Riley Act, Pub. L. 119-1, 139 Stat. 3 (2025). The Act was named for Laken Riley, a 22-year-old nursing student who was senselessly murdered outside Athens, Georgia by a noncitizen in 2024. But, notably, the initial draft of the Laken Riley Act did not contain the statutory language regarding "serious bodily injury" crimes which make it apply to Lopez Cruz. That language was added as an amendment by Senator Joni Ernst after it was previously included as part of Sarah's Law, a bill Senator Ernst had been proposing for more than five years. 171 Cong. Rec. S245-06 (Jan. 20, 2026); *see also, e.g.*, Sarah's Law, S.285, *https://www.congress.gov/bill/116th-congress/senate-bill/285* (Jan. 1, 2019). Sarah's Law was named for Sarah Root, a 21-year-old student killed the night of her college graduation by a noncitizen drunk driver in 2016. That person eventually posted bail and fled the country; he was only found and arrested nearly 10 years later in Honduras. *See* DHS Celebrates the Sentencing of Sarah Root's Killer, DHS Press Release, *https://www.dhs.gov/news/2026/02/02/dhs-celebrates-sentencing-sarah-roots-killer* (Feb. 2, 2026). Senator Ernst's amendment states its purpose is "[t]o include crimes resulting in death or serious bodily injury to the list of offenses that, if committed by an inadmissible alien, require mandatory detention." 171 Cong. Rec. S87-01 (Jan. 13, 2026).

Here, Lopez Cruz was arrested and charged with aggravated assault and strangulation after PPD officers were called to a residence and found his girlfriend beaten and stating that Lopez Cruz was "trying to kill her." (Doc. No. 8-5.) This appears to be the ***exact*** type of factual scenario, (although only allegations at the arrest and charging stages), that the Laken Riley Act and Sarah's Law were drafted to stop: noncitizens arrested for and charged with violent crimes being released on bail or their own recognizance. In effect, Lopez Cruz argues that the Laken Riley Act includes a loophole that would allow the very thing it was signed into law to prevent.

12

applied to him, detention under this Section "is not sufficiently justified because it is based wholly on an unproven accusation without any [individualized] adjudication of guilt or determination that Mr. Lopez Cruz is a danger or flight risk;" so, his detention violates both substantive and procedural due process.  (Doc. No. 10 at 8; *see also* Doc. No. 1.)  While a closer call, the Court disagrees and discusses both Lopez Cruz's arguments in turn below.[9]

### 1.      Lopez Cruz's Substantive Due Process Rights Have Not Been Violated

"To show a violation of substantive due process, a [petitioner] must demonstrate that his detention serve[s] no legitimate government purpose by demonstrating 'a misuse of governmental power that shocks the conscience.'"  *Arias Gudino v. Lowe*, 785 F. Supp. 3d 27, 42 (E.D. Pa. 2025) (quoting *Desousa v. Garland*, No. 21cv3961, 2022 WL 1773604, at *3 (E.D. Pa. May 31, 2022)).  "In the immigration context, the Court must determine whether [Lopez Cruz's] detention is rationally connected to a legitimate government purpose and whether it is excessive in relation to that purpose."  *Id.* (cleaned up).  The Supreme Court "has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process.  As [the Supreme Court] said more than a century ago, deportation proceedings 'would be vain if those accused could not be held in custody pending the inquiry into their true character.'"  *Demore*, 538 U.S. at 523 (quoting *Wong Wing v. United States*, 163 U.S. 228, 235 (1896)).  And, specifically in *Demore*, the Supreme Court "concluded that § 1226(c) [prior to the Laken Riley

---

[9] In his reply brief, Lopez Cruz also appeared to make a facial challenge to the Laken Riley Act (Doc. No. 10 at 9–10), but at oral argument his counsel disclaimed any facial challenge (*see* Doc. No. 14).  But even if Lopez Cruz did bring a facial challenge, it would fail.  As a preliminary matter, this Court is not required to consider legal arguments raised for the first time on reply.  *See Laborers' Int'l Union of N. Am. v. Foster Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir. 1994); *Calderon*, 2025 WL 3754042, at *4.  And even if we were to consider Lopez Cruz's facial challenge, the "most difficult challenge to mount successfully," it would also fail on the merits because, as discussed in Sections III.B.1–2, his as-applied challenge fails.  *United States v. Salerno*, 481 U.S. 739, 745 (1987).  As such, Lopez Cruz has failed to "establish that no set of circumstances exists under which the [Laken Riley] Act would be valid."  *United States v. Rahimi*, 602 U.S. 680, 693 (2024).

Act amendments] passes muster . . ., explaining that the detention of deportable criminal aliens pending their removal proceedings advances Congress's goal of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings and thus increases the chance that, if ordered removed, the aliens will be successfully removed." *Gayle v. Warden Monmouth Cnty. Corr. Inst.*, 12 F.4th 321, 329 (3d Cir. 2021) (cleaned up).

Here, the Court finds that *Demore* and its progeny still apply to Lopez Cruz's 1226(c) challenge. As the Second Circuit observed in 2024, *Demore* "instruct[s] that . . . due process does not require an initial bond determination for those detained under section 1226(c)[.]" *Black v. Decker*, 103 F.4th 133, 142 (2d Cir. 2024); *see also id.* at 141 ("The Supreme Court has held that detention under section 1226(c) without an initial bond determination does not, on its face, violate the detainee's due process rights where detention is 'for the limited period of . . . removal proceedings.'" (quoting *Demore*, 538 U.S. at 531)). Lopez Cruz argues that his detention is based only on now-withdrawn charges of aggravated assault—as well as strangulation, simple assault, and reckless endangerment—and thus, does not bear a rational relationship to the purpose of immigration detention, as-applied to him. (Doc. No. 10 at 9–10.) We are unconvinced.

Lopez Cruz is correct that the pre-Laken Riley Act version of Section 1226(c), upheld as constitutional in *Demore*, required a criminal conviction for mandatory detention. (*See* Doc. No. 10 at 9.) But he is incorrect that mandatory detention of a noncitizen based only on charges, even later withdrawn charges, for certain crimes is therefore unconstitutional, as-applied to him. In fact, *Demore* explicitly stands for the proposition "that Congress may make rules as to aliens that would be unacceptable if applied to citizens." 538 U.S. at 522. And discussed how "reasonable presumptions and generic rules . . . are not necessarily impermissible exercises of

14

Congress' traditional power to legislate with respect to aliens," including when there has been no individualized determination of dangerousness or flight risk. *Id.* at 523–26 (citing *Carlson v. Landon*, 342 U.S. 524 (1952); *Reno v. Flores*, 507 U.S. 292 (1993) (cleaned up)). And here, Lopez Cruz was arrested and charged in January of this year with multiple violent felonies, after he allegedly "punch[ed] and hit[]," "strangled," and "tri[ed] to kill" his girlfriend. (Doc. No. 8-3.) Immediately following the incident, PPD observed facial injuries, including a black eye, and "scratches around [Lopez Cruz's girlfriend's] neck." (*Id.*) When Lopez Cruz was originally detained by ICE on April 2, 2026, those charges were *still* pending against him, and as discussed below, such charges could be reinstated. (*Id.*) Thus, the Court finds that mandatory detention, *under the facts of this case*, is rationally related to Congress's concern that Lopez Cruz may "flee[] prior to or during [his] removal proceedings," and is tailored to further its interest in "increasing the chance that, if ordered removed, [Lopez Cruz] will be successfully removed." *Demore*, 538 U.S. at 528.

And while Lopez Cruz emphasizes that his charges have now been withdrawn (*see* Doc. No. 10 at 9), from the record in front of this Court, this fact on its own is insufficient to support that Lopez Cruz's detention, while he proceeds through deportation proceedings, is unconstitutional. First, it is unclear why exactly the Commonwealth withdrew the charges. From a review of the docket (Doc. No. 8-1), on February 11, 2026, the Commonwealth asked for a continuance due a "witness fail[ing] to appear" and the trial disposition form merely states the reason for the withdrawal was "[p]rosecutorial discretion" (Doc. No. 8-2). It may be that the prosecution dropped the charges because of a lack of cooperation from Lopez Cruz's girlfriend, or because Lopez Cruz is now in federal custody and the Commonwealth believed he may be deported prior to their adjudication. In either event, there is no statute of limitations in

15

Pennsylvania for aggravated assault.  *See* 42 Pa. Cons. Stat. § 5551(6).  And even though Lopez Cruz's attorneys have stated that "he avers he is innocent" (Doc. No. 10 at 7), there has been no factual dispute put in the record before this Court to support such a contention.[10]  *Cf. Nosirov v. Rife*, No. 26cv1534, 2026 WL 916602, at *6–8 (E.D. Pa. Apr. 1, 2026) (finding Laken Riley Act violated substantive due process as to petitioner who was charged with possessing stolen property, but asserted he merely bought a trailer on "Facebook Marketplace, registered it in his own name, surrendered it to law enforcement, and has records supporting that account").  Instead, the facts before the Court contain extremely troubling allegations, allegedly supported by video evidence of Lopez Cruz's girlfriend's interview with PPD and documentary evidence of her injuries as a result of the alleged early morning assault.  (*See* Doc. No. 8-3 at 1.)  That provides sufficient rational connection to the purpose of detention during the pendency of Lopez Cruz's immigration removal proceedings, and, as such, his three-week long detention after his charges were dropped also does not violate his substantive due process rights.

### 2. Lopez Cruz's Procedural Due Process Rights Have Not Been Violated

Lopez Cruz's procedural due process argument also fails at this time.[11]  The Third Circuit has held that "an alien lawfully present but detained under § 1226(c) can [ ] challenge his

---

[10] As the Government states in their sur-reply, there are, albeit more limited than those in the federal criminal process, protections in place during the civil immigration detention process.  (*See* Doc. No. 11 at 7.)  For instance, if Lopez Cruz believes he is improperly categorized and detained under Section 1226(c) due to, for example, mistaken identity, he can immediately seek a hearing under *In re Joseph*, 22 I&N Dec. 799, 1999 WL 339053 (B.I.A. 1999) and 8 C.F.R. § 1003.19(h)(2)(ii), or he may later seek a bond hearing under *German Santos*.

[11] Though, the Court recognizes and shares the concerns raised by our colleagues regarding the due process issues implicated by the Laken Riley Act's amendments to Section 1226(c).  *See Nosirov*, 2026 WL 916602, at *6–8 (discussing concerns with indefinite mandatory detention based only on potentially unfounded accusations of criminality); *Barnett Maisch v. Jamison*, No. 26cv2498, Doc. No. 5 at 4; Doc. No. 11 at 2 n.3 (E.D. Pa.) (same).  While this Memorandum denies Lopez Cruz's Petition, it should not be read to foreclosure all future petitions brought by noncitizens detained under Section 1226(c)(1)(E), or to even foreclose Lopez Cruz himself from bringing a later petition arguing that his

detention under the Due Process Clause." *See German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 210 (3d Cir. 2020); *see also Patel v. O'Neil*, No. 25cv02185, 2025 WL 3516865, at *5 (M.D. Pa. Dec. 8, 2025) ("[I]t is undisputed that Petitioner is entitled to the protections of the Fifth Amendment's due process clause."). In *German Santos*, the Third Circuit articulated four non-exhaustive factors to consider in assessing whether detention has become unreasonable. "The most important factor is the duration of detention." *German Santos*, 965 F.3d at 211. Beyond duration, "we consider whether the detention is likely to continue," "we look to the reasons for the delay," and "we ask whether the alien's conditions of confinement are meaningfully different from criminal punishment." *See id.* (cleaned up).[12]

The first and most important factor weighs in favor of the Government. There is no bright line rule in this Circuit for an unreasonable length of detention, but it "'becomes more and more suspect' after five months." *German Santos*, 965 F.3d at 211 (quoting *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 234 (3d Cir. 2011)); *see also Zadvydas*, 533 U.S. at 701 (2001) ("We do have reason to believe, however, that Congress previously doubted the constitutionality of detention for more than six months. . . . Consequently, for the sake of

---

detention without a bond hearing has gone on too long, such that it no longer serves the purpose of immigration detention.

[12] Lopez Cruz also argues (Doc. No. 10 at 10), that the three-part balancing test in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) should be applied to his procedural due process challenge. But that is less than clear. Certainly, other Circuits have done so. *See, e.g.*, *Hernandez-Lara v. Lyons*, 10 F.4th 19, 27–28 (1st Cir. 2021); *Black v. Decker*, 103 F.4th 133, 147–48 (2d Cir. 2024). But neither *Demore* nor *German Santos* did so when analyzing this factual issue: detention under Section 1226(c). As such, the Court only looks to what we understand to be the controlling precedent in this Circuit.

Though, if the Court were to analyze the Petition under *Mathews*, it would not change the outcome. The *Mathews* test requires a balancing of (1) the private interest; (2) the risk of an erroneous deprivation through the procedures used; and (3) the Government's interest. 424 U.S. at 335. Clearly, Lopez Cruz has a private interest in liberty, and the Government has an interest in immigration detention. But here, the risk of erroneous deprivation appears low considering the evidence the Government has put forth and the potential avenues Lopez Cruz still has to challenge his detention through, for example, a *Joseph* hearing. (*See* Doc. Nos. 8-3, 8-5, 11-1.) So, the balance weighs in favor of the Government.

17

uniform administration in the federal courts, we recognize that period."). Here, Lopez Cruz has only been detained for little more than a month, and it has been barely more than three weeks since his state charges were withdrawn. (*See* Doc. No. 8-5.) While the Court recognizes that any deprivation of liberty is a "particularly weighty interest," *Gayle*, 12 F.4th at 332, Lopez Cruz's current detention—while in active removal proceedings—is barely a third of the 90 days that Congress found to be presumptively reasonable in other immigration detention contexts. *See Zadvydas*, 533 U.S. at 701.

As to the other factors, the Court finds some in favor of Lopez Cruz, though not enough to tip the scales. As to whether the detention is likely to continue, that factor weighs slightly in favor of Lopez Cruz. While the Government will continue to hold him in confinement, his confinement will not be indefinite. His detention will only last as long as his immigration removal proceedings, and neither party has made an exact showing on how long those proceedings are expected to last. Notably, though, before he filed the instant Petition, he was initially scheduled for a hearing in front of Immigration Court on April 13, 2026—just a few days after his arrest by ICE. Thus, as to the reasons for the delay, neither party is responsible.[13] Upon receipt of the Petition, the Court issued the Order directing the Government to hold Lopez Cruz pending future Order of this Court. (Doc. No. 2.) This factor neither weighs in favor of nor against relief. And as to conditions of confinement, Lopez Cruz has made no showing that his conditions of confinement have been akin to criminal detention, particularly poor, or punitive

---

[13] Though, the Court does note that it raised the issue of delay with Lopez Cruz's counsel the day after the Petition was filed. (*See* Doc. No. 5.) Specifically, the Court expressed concern during the hearing that day regarding jurisdiction, due to the fact Lopez Cruz was no longer in this District. (*See id.*) We further advised Lopez Cruz's counsel that if they sought the most expeditious resolution of this matter, they should refile the petition in the Western District of Pennsylvania, where there was clearly jurisdiction. They declined to do so, and instead advocated not only for briefing, but an evidentiary hearing on jurisdiction. So, to the extent there has been any delay in Lopez Cruz's detention since April 9, 2026, it cannot be said to weigh in favor of Lopez Cruz.

in some way.[14] *Cf. German Santos*, 965 F.3d at 213 (finding confinement was akin to criminal detention where the petitioner was "confined to his cell for twenty-three hours per day" and in prison with "convicted criminals" for more than two years).  So, giving particular weight to the length of Lopez Cruz's detention, and based on the limited record in front of this Court, we find that his detention to date has not violated his procedural due process rights.

*     *     *

In sum, Lopez Cruz's current detention pending his immigration removal proceedings does not violate due process of law.  But, to be clear, the Court does not find that continued and open-ended mandatory detention for Lopez Cruz under Section 1226(c)(1)(E) is—or even that it could be—proper.  *See Zadvydas*, 533 U.S. at 690 ("A statute permitting indefinite detention of an alien would raise a serious constitutional problem.").  The Court's holding is merely that Lopez Cruz's little more than a monthlong detention, almost half of which occurred while he faced pending felony charges, and while he is in active removal proceedings, does not *yet* offend due process of law.  Nothing in this Memorandum or the accompanying Order prevents Lopez Cruz from seeking future habeas, *Joseph*, or other relief should he or his counsel determine his detention has continued so long as to be, or involves conditions that make it, unconstitutional.

## III.    CONCLUSION

Petitioner Jose Luis Lopez Cruz is a noncitizen who was arrested and detained by ICE while he had active charges for violently assaulting and strangling his girlfriend.  Because ICE's detention of Lopez Cruz falls squarely within the types of detention Congress sought to allow

---

[14] In fact, the record before the Court supports that Lopez Cruz spent only a limited amount of time housed at a federal pretrial detention center before being transferred to civil immigration detention on April 8, 2026.  (*See* Doc. No. 7-1 (stating Lopez Cruz arrived at the FDC, a criminal detention facility, in Philadelphia on April 2, 2026, at approximately 3:22 p.m., and departed that facility six days later on April 8, 2026, at approximately 12:45 p.m.); Doc. No. 7-2 (stating Lopez Cruz arrived at the MVPC, a civil immigration detention facility at approximately 7:30 p.m. on April 8, 2026).)

through its recent amendments to Section 1226(c) of the INA, he is properly detained under that provision.  And, as Lopez Cruz has only been detained for a month during his removal proceedings, most of which while the instant petition has been pending, his detention without a bond hearing does not yet violate the Due Process Clause of the Fifth Amendment to the U.S. Constitution.  Accordingly, Lopez Cruz's petition is denied.  The Court will also vacate its prior order enjoining the Government from moving Lopez Cruz.  An appropriate order follows.